

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN 11, TEXAS**

GROVER SELLERS

ATTORNEY GENERAL

Hon. Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-5855
Re: Whether lessor would be subject
to gross receipts tax on the rental
received from lessee using motor
trucks for hauling between two or
more incorporated towns.

Could lessor deduct driver's salary,
insurance, or other maintenance ex-
pense before computing the tax?

Your letter of February 7, 1944, submits for our opinion question
therein contained which we quote as follows:

"Article 7066b(a), V.A.C.S., imposes a gross receipts tax and is as fol-
lows:

"'Each individual, partnership, company, association, or corporation do-
ing business as a "motor bus company" as defined in Chapter 270, Acts
Regular Session of the Fortieth Legislature, as amended by the Acts of 1929,
First Called Session of the Forty-first Legislature, Chapter 78, or as
"motor carrier" or "contract carrier" as defined in Chapter 277, Acts
Regular Session of the Forty-second Legislature, over and by use of the
public highways of this State, shall make quarterly on the first day of
January, April, July, and October of each year, a report to the Comptrol-
ler, under oath, of the individual, partnership, company, association, or
corporation by its president, treasurer, or secretary, showing the gross
amount received from intrastate business done within this State in the
payment of charges for transporting persons for compensation and any
freight or commodity for hire, or from other sources of revenue received
from intrastate business within this State during the quarter next pre-
ceding. Said individual, partnership, company, association, or corpora-
tion at the time of making said report, shall pay to the State Treasurer
an occupation tax for the quarter beginning on said date equal to two and
two-tenths (2.2) per cent of said gross receipts, as shown by said report.
Provided, however, carriers of persons or property who are required to
pay an intangible assets tax under the laws of this State, are hereby ex-
empted from the provisions of this Article of this Act.'

"I find where truck owners have been making contracts with large transfer and freight companies by leasing their trucks, furnishing driver, paying workmen's compensation insurance on said driver, and paying all costs and expenses of operations, maintenance and upkeep of said equipment, etc. See copy of contract form between Lessee and Lessor.

"The Lessee operates under a common carrier's permit and is subject to the intangible tax.

"Please tell me if the Lessor would be subject to the gross receipts tax on the rental received from Lessee where hauls are made between two or more incorporated towns within this State. Also, would the Lessor be permitted to deduct the driver's salary, insurance or other maintenance expense before computing the tax?"

You also attach copy of a lease agreement headed at the top "Exhibit A," to be considered in connection with your letter in answering your question. For the sake of brevity, this lease agreement is not copied herein, but retained by us, as we assume you have a copy or can secure another if you deem it necessary.

The taxing act here involved refers to Chapter 277, Acts Regular Session, 42nd Legislature, V.R.C.S., for a definition of "motor carrier" and "contract carrier" subject to the tax.

It therefore becomes necessary to lay Article 7066b(a), V.R.C.S., alongside the statutory definitions therein referred to to see if a lessor of motor equipment under the conditions embraced in your letter and the lease agreement submitted by you is a "motor carrier" or "contract carrier," and thus subject to the tax. Chapter 277, supra, defines a "motor carrier" as follows:

"The term 'motor carrier' means any person, firm, corporation, company, copartnership, association or joint stock association, and their lessees, receivers or trustees appointed by any court whatsoever owning, controlling, managing, operating or causing to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed; provided that the term 'motor carrier' as used in this Act shall not include, and this Act shall not apply to motor vehicles operated exclusively within the incorporated limits of cities or towns." (Emphasis ours)

A "contract carrier" is defined as follows:

"(h) The term 'contract carrier' means any motor carrier as hereinabove defined transporting property for compensation or hire over any highway in this State other than as a common carrier."

This lessor is unquestionably, in the language of the above definition, a "person, firm or corporation;" it owns, controls, manages, operates

or causes to be operated a "motor propelled vehicle used in transporting property for compensation or hire" between two or more incorporated cities, towns or villages, as distinguished from exclusive operation in cities or towns. Such a "lessor" as posed in your letter falls squarely within the purview of the statutory definition, whether treated as a "motor carrier" or "contract carrier," and hence in our view is subject to the tax imposed by Article 7066b(a), supra. We are not without judicial confirmation of this conclusion, although the cases we note are not tax cases, but involve penal violations of Chapter 277, supra. This is not important, however, for we need only to determine if such lessor is a "motor carrier" or "contract carrier" in the purview of the statutory definition adopted in the Act, which is the same for taxing purposes as for violations of the Act; if so, tax liability follows as a matter of law under the express terms of the taxing act.

The Supreme Court, in the case of New Way Lumber Co., et al, v. Smith, 96 S.W. (2d) 282, in an injunction suit by the Lumber Company against the members of the Railroad Commission and some of its executive officers concerned primarily with motor transportation, sought to restrain interference with its operations upon the ground it was not a "motor carrier" or "contract carrier" as defined in the Motor Carrier Act (Chapter 277, supra). The Court said:

". . . The term 'motor carrier' as defined in the act includes every one operating 'any motor propelled vehicle used in transporting property for compensation or hire over any public highway in this State,' and excepts those 'operated exclusively within the incorporated limits of cities or towns.' The term 'common carrier' has long had a definite meaning in this state, and the Legislature saw no necessity for defining that term. However, the Legislature did see fit to define the terms 'motor carrier' and 'contract carrier.' Thus it clearly appears in subsections (g) and (h) of section 1 of the act (Vernon's Ann. Civ. St. art. 911b, § 1) that the Legislature intended to bring under the act every person who operates any motor propelled vehicle in transporting property for compensation or hire on the public highways, outside of cities, either as a common carrier or as a contract carrier." (Emphasis ours)

The case of Reavley v. State, (Court of Criminal Appeals) 63 S.W. (2d) 709, involved a criminal prosecution, the defense of the defendant being that he did not come within the definition of the Act. Defendant in this case leased his truck under a written agreement, as is the case here, some of the provisions being similar to the provisions of the lease submitted by you. The lease agreement involved in this case is set out in the opinion and for comparative purposes we quote so much as we deem pertinent:

"Appellant was the owner of the truck and trailer described in the following written agreement:

"'Memorandum of agreement made and entered into this Fourth day of April, A.D., 1932, by and between Armour & Company, a corporation, first party, and Thos. W. Reavley, Jr., of Nacogdoches, Texas, second party.

"'Whereas second party is the owner of a certain Chevrolet truck and trailer of five tons capacity, motor number T2853565, carrying 1932 license number 166835, suitable for the hauling and delivering of meat and meat products, and

"'Whereas first party, in the operation of its Nacogdoches, Texas, branch is willing to hire said truck for use in the hauling and deli ering of the products sold in said branch,

"'Now, therefore, this agreement witnesseth:

"'(1) Second party hereby gives to first party the sole and exclusive use of the truck above mentioned, together with a competent driver for the same, who shall at all times be subject to the control and direction of first party in and about the conduct of its business, in the hauling and delivering of its products as aforesaid.'

"'(2) Second party shall keep said truck in good working condition and shall pay all expenses of its operation, including the salary or wages of the driver, and also including any and all city, state or county taxes, fees and licenses.

"'(3) Second party shall also indemnify and hold first party harmless from any claims which may be made against it by the driver or drivers of said truck under the compensation laws of the State of Texas, in the event of injury to said driver or drivers.

"'(4) In the event of said truck becoming disabled because of accident or breakdown, or for any other reason, second party shall substitute another truck of equal capacity and serviceability during such time as the truck covered by this contract may be unavailable.

"'(5) It is estimated that said truck will be obliged to travel approximately Thirteen hundred (1,300) miles per week over all kinds of roads, but it is expressly understood and agreed that Thirteen hundred (1,300) miles shall be regarded only as an average week's travel and that any excess in any week shall not be regarded as a breach of this contract on the part of the first party, nor make it liable to second party for any greater compensation than is hereinafter named.

"'(6, First party shall pay second party the sum of sixty dollars ($60.00) per week as full compensation for the use of such truck, the services of the driver, and all expenses of operating the truck as above set forth.

"'(7) The driver of said truck shall take receipts from customers of first party, as may be directed, and shall, in the case of C.O.D. orders, collect from such customers before delivery of the goods, and second party shall be responsible to first party for the prompt remittance to first party of all moneys collected from its customers on C.O.D. orders or otherwise.

"'The terms of this contract shall be six months from the date hereof, but first party shall have the right to terminate the same on ten (10) days' notice to second party, in the event of dissatisfaction with the arrangement.

"'Executed in duplicate the day and year first above written.

"'Armour and Company
"'(Signed) J. B. Scott, First Party
(Signed) Thos. M. Reavley, Jr.,
Second Party.'

"Under the foregoing agreement, appellant's truck was operated over a public highway from Fort Worth to Nacogdoches in carrying the products of Armour & Co. The driver of the truck was employed by appellant. Armour & Co. had the sole and exclusive use of the truck. The driver was subject to the control and direction of the company in the conduct of its business in hauling and delivering its products.

". . .

"Appellant takes the position that the evidence on the part of the state shows that the truck was not engaged in the transportation of property for comepnsation or hire, but was being operated exclusively by Armour & Co. in the hauling of its own products. We are unable to bring ourselves to appellant's view. We are constrained to hold that the trial court was warranted in concluding that the method employed was merely a device which enabled appellant to use the truck in transporting property for comepnsation or hire without first having complied with the statutes to which reference has been made. Under the memorandum of agreement, appellant paid all of the expenses of operation, including the wages of the driver. He kept the truck in good running condition. He agreed to hold Armour & Co. harmless from any claim which might be made against said company by the driver under the compensation laws of Texas in the event of injury to the driver. He obligated himself to substitute another truck in the event of a breakdown, or if for any other reason the truck in question could not be used. The contract stipulated the approximate number of miles the truck would be driven a week; provided that any excess mileage should not be considered as a breach of the contract, nor make Armour & Co. liable for greater compensation than $60 per week. Appellant was responsible to the company for the prompt remittance of all collections made by the driver."

It follows from the foregoing that the lessor under the circumstances submitted by you is liable for the gross receipts tax imposed by Article 7066b (a), supra, without deducting driver's salary, insurance and other

Hon. Geo. H. Sheppard, page 6 (O-5855)

maintenance expense, and you are accordingly so advised.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ L. P. Lollar

L. P. Lollar
Assistant

LPL:AMM:egw

APPROVED MAR 14, 1944
/s/ Geo. P. Blackburn
(Acting)
ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion Committee
By B.W.B.
Chairman